# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT WINCHESTER

| | |
|---|---|
| WANAMAKER NURSERY, INC.; ) <br> TIMOTHY WANAMAKER, individually ) <br> and d/b/a WANAMAKER NURSERY, ) <br> INC. and d/b/a TENNESSEE BUSH ) <br> FARM; ASHLEY WANAMAKER, ) <br> individually and d/b/a ) <br> WANAMAKER NURSERY, INC.; ) <br> ANDREA WANAMAKER, individually ) <br> and d/b/a WANAMAKER NURSERY, ) <br> INC.; and WILLIAM WANAMAKER, ) <br> Individually and d/b/a ) <br> WANAMAKER NURSERY, INC. ) <br> ) <br> *Plaintiffs*, ) <br> ) <br> v. ) <br> ) <br> JOHN DEERE RISK PROTECTION, ) <br> INC., d/b/a FMH RISK PROTECTION, ) <br> INC. ) <br> ) <br> *Defendants.* ) | Case No. 4:17-cv-77 <br><br> Judge Steger |

## ORDER

With an estimated population of 10 quintillion,[1] insects are all around us. Equally at home in cities, forests and fields, they pollinate our plants and compete with us for the food we eat. At times beautiful and benign—at other times annoying, loathsome and destructive—we share with them our homes, workplaces, recreational spaces, and conveyances—in short, our world. By and large, our relationship with our six-legged co-habitants is unwittingly (at least for most of us)

---

[1] Smithsonian Institute (Nov. 17, 2018), https://www.si.edu/spotlight/buginfo/bugnos

1

symbiotic; however, there are times when humans and insects compete directly. And, at such times, we are reminded that the age-old curse—"plague of locusts"[2]— is not just apocryphal.

The Plaintiffs herein—the Wanamakers—experienced such a "plague" first hand when hungry insects devoured the plants in their nursery in 2009. This disaster prompted them to file claims against their insurer, FMH Risk Protection, Inc. ("FMH"), under seven different insurance policies. FMH initially denied payment under all of seven policies. The parties then submitted the claims to arbitration, where the arbitrator, through a conditional award, required the Wanamakers to submit additional documentation to FMH. Following receipt of such documentation, the arbitrator directed FMH to re-open its claims process and reconsider the Wanamakers' claims in light of the new documents. FMH determined that the Wanamakers were entitled to recover under one of the seven policies, so FMH paid that claim. The arbitrator then made his final award, finding that FMH paid all amounts properly owed under the policies.

Following the arbitrator's final decision, the Wanamakers filed suit, seeking judicial review of the decision [Doc. 1]. In response, FMH filed a motion for summary judgment, contending that the Court must uphold the arbitrator's final award under the Federal Arbitration Act [Doc. 19].

**I.      Factual Summary**

The Wanamakers operate several ornamental plant nurseries in Warren County and Grundy County, Tennessee. To protect their crops, they purchased several crop-insurance policies from FMH, identified as follows:

---

[2] *See* Exodus 10:13-15, "So Moses stretched out his staff over Egypt, and the LORD made an east wind blow across the land all that day and all that night. By morning the wind had brought the locusts; they invaded all Egypt and settled down in every area of the country in great numbers. Never before had there been such a plague of locusts, nor will there ever be again. They covered all the ground until it was black. They devoured all that was left after the hail—everything growing in the fields and the fruit on the trees. Nothing green remained on tree or plant in all the land of Egypt." *But see contra*, Matthew 3:4, describing John the Baptist who enjoyed his locusts with a bit of wild honey. Suffice it to say, the battle between mankind and bugs has been waged for a long time.

| Policy No. | Insured | Location |
|---|---|---|
| 48111-09 | Wanamaker Nursery, Inc. | Grundy County |
| 48124-09 | Timothy Wanamaker | Warren County |
| 48125-09 | Timothy Wanamaker | Grundy County |
| 48128-09 | Andrea Wanamaker | Grundy County |
| 48129-09 | Andrea Wanamaker | Warren County |
| 48130-09 | Ashley Wanamaker | Warren County |
| 48133-09 | Wanamaker Nursery, Inc. | Warren County |

The Federal Crop Insurance Act, 7 U.S.C. § 1501 *et seq.*, and corresponding regulations under Title VII, Chapter IV of the Code of Federal Regulations, govern the insurance policies in this case. Such policies are written on standardized contracts promulgated and regulated by the Federal Crop Insurance Corporation ("FCIC"), a wholly owned government corporation managed by the Risk Management Agency of the U.S. Department of Agriculture.

In 2009, the Wanamakers submitted claims to their insurer, FMH, under the above-referenced policies for losses occasioned by insect infestation. When FMH received those claims, FMH was obligated—under the insurance policies and applicable regulations—to verify that the total inventory value for each category of nursery plants was within 110% of either the actual inventory value of those plants at the time insurance attached or the highest dollar amount of sales of that category of plants over the previous three years. FMH found that the Wanamakers' policies failed to meet either of those threshold requirements, so it denied all of their claims. Each insurance policy contained an arbitration clause. The Wanamakers initiated arbitration to contest FMH's determination that it would not indemnify them for their losses.

The arbitrator conducted a hearing and issued a conditional award [Doc. 19-5] instructing the Wanamakers to provide FMH with additional documents and directing FMH to re-evaluate the claims after receipt such documentation. After the Wanamakers provided the requisite documents, FMH determined that one of the insurance policies—Policy 48125-09—met the 110% threshold

3

requirement, resulting in a payout to the Wanamakers of $133,650. FMH determined that the remaining six policies still did not meet the threshold requirements under the insurance policies.

The arbitrator then issued his final award [Doc. 19-6] concluding that FMH "has paid all claim amounts that are proper and no additional indemnity related to the 2009 claim on any policy is owed to the [Wanamakers]. The [Wanamakers'] claims asserted herein . . . are hereby denied in their entirety, and dismissed with prejudice." [*Id.* at PageID #: 105].

The Wanamakers then filed suit[3] to contest the arbitrator's findings [*See* Doc. 1]. They point to Section 20(c) of their insurance policies' Basic Provisions, which states that: "Any decision rendered in arbitration is binding on you and us unless judicial review is sought . . . ." [Doc. 19-2 at PageID #: 78]. Based on that provision, the Wanamakers' claim that Section 20(c) grants the court authority to perform a *de novo* review of the arbitrator's decision. The Wanamakers also brought a bad-faith claim against FMH under Tennessee law.

FMH responded with a summary judgment motion [Doc. 19] asserting that the Court's review is limited under the Federal Arbitration Act; collateral estoppel precludes the Wanamakers' claims; and federal law preempts their bad-faith claim. The Wanamakers countered that they are entitled to *vacatur* even if the Federal Arbitration Act applies and their bad-faith claim is legally viable.

**II.    Analysis**

    **A.    Summary Judgment Standard**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits "show that there is no genuine issue as to any

---

[3] Section 20(c) of the Wanamakers' policies require that suit "be filed not later than one year after the date the arbitration decision was rendered." The Wanamakers timely filed this case on December 11, 2017, a day prior to the one-year anniversary of the arbitrator's December 12, 2016, final award.

4

material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As the moving party, FMH bears the burden of showing the absence of a genuine issue of material fact as to at least one essential element of the Wanamakers' claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Wanamakers, as the non-moving party, must respond with sufficient evidence from which a jury could reasonably find for them. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Based on the evidence, the Court must then determine "whether . . . a sufficient disagreement [exists] to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In making this determination, the Court must draw all reasonable inferences in favor of the Wanamakers. *See Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### B. Applicability of Federal Crop Insurance Act

The Wanamakers' crop insurance policies were issued subject to the Federal Crop Insurance Act ("FCIA"), 7 U.S.C. § 1501 *et seq*. Congress enacted the FCIA in 1938 "to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." *Williams Farms of Homestead, Inc. v. Rain and Hail Insurance Services, Inc.*, 121 F.3d 630, 633 (11th Cir. 1997) (quoting 7 U.S.C. § 1502); *Kansas ex rel. Todd v. United States*, 995 F.2d 1505, 1507 (10th Cir. 1993). The Act promotes stability by encouraging farmers to purchase multiple peril crop insurance that protects them against loss from natural disasters. *Meyer v. Conlon*, 162 F.3d 1264, 1266 (10th Cir. 1998).

Under the original scheme of the FCIA, only the Federal Crop Insurance Corporation issued crop-insurance policies and handled claims on those policies; however, that changed in 1980 when Congress amended the FCIA to, among other things, permit the FCIC to utilize private-insurance companies to provide crop insurance. *Id.* These private insurers could sell and service crop insurance policies, and the FCIC re-insured those policies. *See Farmers Crop Ins. All. v. Laux*, 442 F. Supp. 2d 488, 491 (S.D. Ohio 2006) (noting that "private insurance companies sell and service crop insurance policies and are reinsured by the FCIC"). "[T]o qualify for re[-]insurance through the FCIC, the policies written by approved private insurers must comply with the FCIA and its accompanying regulations." *Davis v. Producers Agr. Ins. Co.*, 762 F.3d 1276, 1284 (11th Cir. 2014).

C. **The Federal Arbitration Act Controls.**

While some general background on the FCIA and crop insurance policies is necessary to an understanding of the dispute pending before the Court, it is ultimately the Federal Arbitration Act ("FAA") that governs the outcome in this case. Congress enacted the FAA to create a federal policy favoring arbitration[4] and to "reverse the longstanding judicial hostility to arbitration agreements . . . ." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). For the FAA to apply, an arbitration agreement must meet the following two conditions: (1) it must be in writing; and (2) it must be part of "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2.

The FAA's first condition is clearly met. A copy of the written arbitration agreement between the Wanamakers and FMH is in the record [*See* Docs. 19-2, 19-3, 19-4]. Likewise, the second condition (i.e., interstate commerce) is not in dispute. "The *sine qua non* of the FAA's

---

[4] *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

6

applicability to a particular dispute is an agreement to arbitrate the dispute in a contract which evidences a transaction in interstate commerce." *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 314 (6th Cir. 2000) (quoting *Hartford Lloyd's Ins. Co. v. Teachworth*, 898 F.2d 1058, 1061 (5th Cir. 1990)). The Supreme Court has held that the phrase "involving commerce" is very broad indicating that Congress intended to fully exercise its Commerce Clause powers. *Allied–Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273–75 (1995). And "[c]rop insurance contracts fall within this category and are subject to the FAA." *Great Am. Ins. Co. v. Moye*, 733 F. Supp. 2d 1298, 1302 (M.D. Fla. 2010) (collecting cases); *see Cain Field Nursery v. Farmers Crop Ins. All., Inc.*, 2012 WL 1286657, at *5 (E.D. Tenn. Apr. 13, 2012) (collecting cases for the proposition that the FAA "applies to arbitration awards in crop insurance cases"); *Svancara v. Rain & Hail, LLC*, 2009 WL 2982906, at *3 (D. Neb. Sept. 11, 2009) (concluding "that a crop insurance policy, reinsured by a federal agency, 'involves interstate commerce'"). Because this case pertains to crop-insurance contracts, it necessarily involves interstate commerce. Both statutory requirements are met in this case, and the FAA applies to the Wanamakers' crop insurance policies. 9 U.S.C. § 2.

### D. Standard of Review

In this case, the Wanamakers seek *de novo* review of the arbitrator's final decision. For reasons that follow, the Court disagrees that *de novo* review is the proper standard of review to be applied by the Court.

The Wanamakers' insurance policy does afford them the opportunity to seek judicial review of their arbitration award. Specifically, section 20(c) of the Basic Provisions states that

> Any decision rendered in arbitration is binding on you and us unless judicial review is sought . . . . Notwithstanding any provision in the rules of the [American Arbitration Association], you and we have the right to judicial review of any decision rendered in arbitration.

7

[Doc. 19-2].

The Wanamakers argue that the phrase, "unless judicial review is sought," authorizes the Court to conduct a *de novo* review of the arbitration award. This argument ignores the fact that the contractual language relied upon by the Wanamakers does not prescribe a standard of review to be applied by the Court. It simply states that the arbitrator's decision is subject to judicial review. To determine the proper standard of review to be applied, the Court looks not to the language of the insurance policy, but to the FAA and case precedent interpreting it. *See* 9 U.S.C. § 2; *Union P.R. Co. v. Sheehan*, 439 U.S. 89, 91 (1978) (noting that the scope of judicial review for arbitration awards is "among the narrowest known to the law."). The FAA permits only limited review—not *de novo* review—of an arbitration decision. *See Campbell's Foliage, Inc. v. Fed. Crop Ins. Corp.*, 562 F. App'x 828, 830 (11th Cir. 2014) (determining that similar crop-insurance policy language calls for FAA-limited judicial review of an arbitration decision); *Great Am. Ins. Co. v. Moye*, 733 F. Supp. 2d 1298, 1301 (M.D. Fla. 2010) (same and listing other cases); *see also Cain Field Nursery*, No. 4:09–cv–78, 2012 WL 1286657 at *5 (E.D. Tenn. Apr. 13, 2012) (same and listing other cases). Here, the "unless judicial review is sought" clause in the insurance contract instructs the parties that they are bound by the arbitrator's decision absent a request for judicial review; however, it does not change the fact that such review must be consistent with—and limited by—the FAA. *See* 9 U.S.C. §§ 9–11.

E.  *Vacatur* **of the Arbitration Award**

The Wanamakers argue that the Court should vacate the arbitration award. In considering this argument, the Court notes that it must "refrain from reversing [the] arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error." *Solvay Pharm., Inc. v. Duramed Pharm., Inc.*, 442 F.3d 471, 476 (6th Cir. 2006) (brackets, citation,

8

and emphasis omitted). Further, the Court should not re-examine the merits or factual determinations of the underlying arbitration award. *See Farmers Crop Insurance Alliance v. Laux*, 422 F.Supp.2d 898, 902 (S.D. Ohio 2006). Instead, the Court should limit itself to evaluating whether the Wanamakers were denied a fair hearing at arbitration. *See National Post Office v. U.S. Postal Serv.*, 751 F.2d 834, 841 (6th Cir.1985) ("Arbitrators are not bound by formal rules of procedure and evidence, and the standard for judicial review of arbitration procedures is merely whether a party to arbitration has been denied a fundamentally fair hearing."). *See also Anaconda Co. v. Dist. Lodge No. 27 of the Int'l Ass'n of Machinists & Aerospace Workers*, 693 F.2d 35, 36 (6th Cir. 1982) ("The standard of review in arbitration cases is very narrow.").

The Wanamakers bear the burden of establishing grounds to vacate the arbitration award,[5] and there are but four ways for them to do so: (1) the award was procured by corruption, fraud, or undue means; (2) there was partiality or corruption in the arbitrator; (3) the arbitrator was guilty of misconduct or misbehavior in conducting the hearing in a manner which prejudiced a party's rights; or (4) the arbitrator exceeded his powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10(a).[6]

The Wanamakers do not argue that fraud, corruption or partiality affected the arbitration award. Rather, they contend that the award should be vacated under 9 U.S.C. §§ 10(a)(3)-(4)

---

[5] *See Bauer v. Carty & Co., Inc.*, 246 F. App'x 375, 379 (6th Cir. 2007) (noting that the party requesting vacatur bears the burden of establishing grounds to vacate an arbitration award).

[6] Our Supreme Court has expressly held that § 10 "provide[s] the FAA's exclusive grounds for expedited vacatur." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008). Though not mentioned by the parties in this case, some circuits—including our own—recognize "manifest disregard of the law" as a further ground for vacatur of an arbitration award; however, the Supreme Court cautioned against treating this "supposed addition . . . as the camel's nose" for further expansion. Since that time, the Sixth Circuit has, through *dicta*, stated that "[w]hether 'manifest disregard of the law' may still supply a basis for vacating an arbitrator's award as 'a judicially created supplement to the enumerated forms of FAA relief . . . is an open question.'" *Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 600 (6th Cir. 2016). Some Sixth Circuit panels have nonetheless "held that despite the Supreme Court's language in *Hall Street*, the 'manifest disregard' doctrine remains a viable ground for attacking an arbitrator's decision." *Marshall v. SSC Nashville Operating Co., LLC*, 686 Fed.App'x. 348, 352 (6th Cir. 2017).

9

because the arbitrator committed *misconduct* or *exceeded his powers* by: (1) requiring the Wanamakers to provide additional documentation to FMH; (2) directing the Wanamakers to provide such documents even after the document-retention period had expired under the policy; and (3) rejecting the Wanamakers' contention that FMH waived its right to enforce the 110% threshold requirements by initially issuing the policies. These arguments will be addressed in the order presented.

### 1. Obligation to Produce Additional Documents

Following his initial determination, the arbitrator required the Wanamakers to produce additional documents to FMH. Support for this requirement is found in section 6(c)(2) of the Nursery Crop Provisions which states: "At our option, you will be required to provide documentation in support of your [claim]." [Doc. 19-3]. And, section 6(c)(2) which states: "failure to provide documentation when requested or providing inadequate documentation will result in denial of insurance for the crop year for any basic units for which such documentation was not provided." [*Id.*]. Under the insurance policies governing the parties' respective obligations, the Wanamakers were obligated to provide sufficient documentation to support any insurance claim. [*See id.*]. The Court cannot find that the arbitrator engaged in misconduct or exceeded his powers by directing the Wanamakers to fulfill an obligation required by the very contract upon which their claims are based.

### 2. Expiration of the Insurance Policies' Document Retention Period

The Wanamakers next contend that the arbitrator engaged in misconduct or exceeded his powers by requiring them to produce documents beyond the expiration of their insurance policies' three-year document-retention period. This argument rests upon section 21 of the insurance policies' Basic Provisions which requires the insured to keep "[c]omplete records . . . of the insured

10

crop on each unit for three years after the end of the crop year . . . ." [Doc. 19-2]. The Wanamakers fail to note, however, that the Preamble to the Basic Provisions provides: "[i]f a conflict exists among the policy provisions, the order of priority is: (1) the Catastrophic Risk Protection Endorsement, as applicable; (2) the Special Provisions; (3) the Crop Provisions; and (4) these Basic Provisions . . . ." [*Id.*]. And, under section 6(c)(2) of the Crop Provisions (which take precedence over the Basic Provisions), the Wanamakers were required to keep records for the three years prior to their 2009 claim (*See* Doc. 19-3: "At our option, you will be required to provide documentation . . . for the three previous crop years in the amount of detail we require . . . ."). Given that the Crop Provisions control, the Wanamakers were required to keep supporting documents for their claim for the three years preceding 2009. The arbitrator did not engage in misconduct or exceed his powers in making that determination.

### 3. Waiver of Insurance Policies' Threshold Requirement

Finally, the Wanamakers contend that the arbitrator erred in allowing FMH to deny claims based on the Wanamakers' inability to verify that the total inventory value for each category of nursery plants was within 110% of either the actual inventory value of those plants at the time insurance attached or the highest dollar amount of sales of that category of plants over the previous three years. The Wanamakers assert that, under the Nursery Crop Underwriting Guide Section 13(B)(2) and 14(C)(1)[Doc. 26-4], FMH waived the enforcement of this 110% threshold requirement by issuing them insurance policies following their pre-acceptance inspection. And, according to the Wanamakers, the arbitrator erred by ignoring this so-called requirement. Even if true, the Wanamakers' waiver argument amounts to a factual error on the part of the arbitrator, which is not a basis to overturn the decision. *See Solvay Pharm., Inc.*, 442 F.3d at 476 ("Courts must refrain from reversing an arbitrator simply because the court disagrees with the result or

11

believes the arbitrator made a serious legal or factual error.") (brackets, citation, and emphasis omitted)).

### 4. Factual or Legal Error No Basis for *Vacatur*

As discussed above, although the Court finds that there is sufficient support, both factually and legally, for the arbitrator's decisions in this case, even if the arbitrator committed a factual or legal error, it is insufficient for vacatur under the FAA. *See id.*

Viewing the Wanamaker's arguments through the prism of § 10(a)(3) of the FAA, there is no evidence that the arbitrator engaged in misconduct. The Wanamakers may well believe that the arbitrator's actions prejudiced them. Indeed, he did not rule in their favor. But, the arbitrator's actions appear to be entirely consistent with the FCIA policy requirements and certainly do not suggest any misconduct on his part.

For the same reasons, the Court rejects the Wanamakers' contentions under § 10(a)(4) of the FAA because "[t]he burden of proving that the arbitrator[ ] exceeded their authority is very great." *Id.* "The terms of the contract define the powers of the arbitrator, and 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed a serious error does not suffice to overturn his decision.'" *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). If a court can find any argument that is legally plausible and supports the award, then the award must be confirmed. *Id.* Again, there are several reasons—all of which are legally plausible and consistent with the governing policies—to support the arbitrator's finding. Nothing in the record suggests that the arbitrator exceeded the scope of his power under § 10(a)(4).

## F. Federal law preempts the Wannamakers' state-law claim.

Finally, the parties disagree as to whether federal law and regulation preempt the Wanamakers' bad-faith claim under Tennessee Code Annotated § 56–7–105.

The Supremacy Clause[7] affords Congress the power to preempt state law. *Louisiana Public Serv. Comm'n v. FCC*, 476 U.S. 355, 368 (1986). To do so, Congress must either expressly state its intention or legislate so comprehensively that no room is left for state legislation in a subject area. *Id.* If Congress does either, courts may not "give effect to state laws that conflict with federal laws." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383 (2015). Thus, any state law, "which interferes with or is contrary to federal law, must yield." *Gade v. Nat'l Solid Wastes Management Assn.*, 505 U.S. 88, 108 (1992).

The FCIA does not preempt all state-law claims. *See Holman v. Laulo–Rowe Agency*, 994 F.2d 666, 669 (9th Cir. 1993) (mentioning, in the context of complete preemption and the well-pleaded complaint doctrine, that the FCIA does not preempt all state causes of action pertaining to FCIA-issued crop insurance); *Meyer v. Conlon*, 162 F.3d 1264, 1269 (10th Cir. 1998) ("Congress has not expressed a clear intent to preempt all state law causes of action against private reinsurers."). Instead the Court must determine if the Wanamakers' asserted claims interfere with or are contrary to the FCIA, its regulations, policies, etc. 7 C.F.R. § 400.351 (noting that federal law and regulation preempt "[s]tate laws and regulations not consistent with the purpose, intent, or authority of the [FCIA]."). A bad-faith claim is one such example that runs counter to the FCIA; therefore, the Court finds that federal law preempts the Wanamakers' bad-faith claim. *See Plants, Inc. v. Fireman's Fund Ins. Co.*, No. M2011-02274-COA-R3CV, 2012 WL 3326295, at *8 (Tenn. Ct. App. Aug. 13, 2012) (affirming dismissal of a "statutory bad faith [claim] pursuant to

---

[7] U.S. Const. art. VI, cl. 2.

Tennessee Code Annotated § 56–7–105 as [it] [was] preempted by federal law because [it] pertain[ed] to actions or inactions 'required or authorized' under the FCIA, federal regulations, or the policy provisions.").

Against the backdrop of federal preemption, the insurance policies' Basic Provisions are instructive as to the bad-faith claim. Directed at the insured, section 20(i) of the Basic Provisions states the following:

> In a judicial review only, you may recover attorneys fees or other expenses, or any punitive, compensatory or any other damages from us *only if* you obtain a determination from FCIC that we, our agent or loss adjuster failed to comply with the terms of this policy or procedures issued by FCIC and such failure resulted in you receiving a payment in an amount that is less than the amount to which you were entitled.

[Doc. 19-2] (emphasis added). Applying that provision, the Wanamakers were required to obtain authorization from the FCIC before making any bad-faith claim for damages. It is uncontroverted that they failed to do so and the policies' relevant provision preempts state law.[8] For those reasons, the Court will dismiss the Wanamaker' bad-faith claim under Tennessee law.

### III. Conclusion

Congress enacted the Federal Arbitration Act to create a federal policy favoring arbitration. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA "expresses a presumption that arbitration awards will be confirmed." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005). To that end, "[w]hen courts are called on to review an arbitrator's decision, the review is very narrow; it is one of the narrowest standards of judicial review in all of American jurisprudence." *Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 600 (6th Cir. 2016).

---

[8] *See id.*

While the Court acknowledges that the Wanamakers suffered significant losses due to insect infestation, they have not established any grounds under the FAA's narrow-review standards by which this Court can overturn the arbitrator's award.[9]

For the foregoing reasons, it is hereby **ORDERED** that:

1. FMH Risk Protection, Inc.'s Motion for Summary Judgment [Doc. 19] is **GRANTED** and **JUDGMENT** will be entered in its favor.

2. This case will be **DISMISSED** with prejudice.

**SO ORDERED.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE

---

[9] Because the Court determined that the FAA applies, the Wanamakers' failed to establish grounds for vacating the arbitration award, and their state-law claims are preempted, the Court need not engage in a collateral-estoppel analysis